UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Commercial Law Corporation, P.C.,
a Michigan Professional Corporation,

       Plaintiff,

v.                              Case No. 10-13275
                                      Sean F. Cox
Federal Deposit Insurance Corporation,     United States District Court Judge
as Receiver for Home Federal Savings
Bank,

       Defendant.

_____/

## OPINION & ORDER

Plaintiff Commercial Law Corp., P.C. ("Plaintiff") is a law firm. Plaintiff filed this action against Defendant Federal Deposit Insurance Corporation, as Receiver for Home Federal Savings Bank ("Defendant" or "the FDIC") on August 18, 2010. Plaintiff claims that it is owed more than $176,000.00 in unpaid legal fees.

The matter is now before the Court on: 1) the FDIC's Motion for Summary Judgment; 2) the FDIC's Motion seeking to strike evidence produced by Plaintiff after the close of discovery; and 3) Plaintiff's "Motion to Strike Defendant's Motions and Briefs." Two of the above motions were scheduled to be heard by the Court on February 20, 2014. Having thoroughly reviewed the motions, however, the Court concludes that oral argument would not aid the Court as to any of the pending motions. *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. The Court therefore orders that the motions will be decided without oral argument.

1

As explained below, more than three years after Plaintiff filed this action, long after discovery closed, and after the FDIC had filed its Motion for Summary Judgment, Plaintiff changed its entire theory, and produced a written agreement that it now asserts that its claims are based upon. Plaintiff has also submitted an affidavit from its principal and counsel, Mr. Erwin, that contradicts his prior deposition testimony. The Court shall strike both the written agreement and the affidavit under Fed. R. Civ. P. 37(c). The Court shall also grant the FDIC's Motion for Summary Judgment and dismiss this action in its entirety because, even if the Court were to consider those items, Plaintiff's claims still fail as a matter of law on several bases. Finally, the Court shall deny Plaintiff's frivolous Motion to Strike Defendant's Motions and Briefs for lack of merit.

## BACKGROUND

Plaintiff is a law firm. Plaintiff filed this action against Defendant Federal Deposit Insurance Corporation, as Receiver for Home Federal Savings Bank ("Defendant" or "the FDIC") on August 18, 2010. Attorney L. Fallasha Erwin is Plaintiff's principal and has represented Plaintiff throughout this very contentious case. This action was originally assigned to the Honorable Denise Page Hood.

### Plaintiff's Complaint and Attachments

On November 6, 2009, the FDIC took over the operations of Home Federal Savings Bank ("Home Federal"). (Compl. at ¶ 6). Plaintiff had served as general counsel for Home Federal for over twenty years, rendering a variety of legal services. (*Id*. at ¶ 8).

After the FDIC was appointed as Receiver of Home Federal, the FDIC sent Plaintiff a notice stating that Plaintiff "may have a claim against the Failed Institution" (Home Federal) and

2

advising Plaintiff how to file a claim with the FDIC.  (*See* Ex. A to Pl.'s Compl.).

Thereafter, Plaintiff submitted a claim.  (Pl.'s Compl. at ¶ 9).  On February 3, 2010,

Plaintiff sent the FDIC a letter stating, in pertinent part:

> I am in receipt of your letter dated January 7, 2010.  I had previously submitted my law firm's invoice and Proof of Claim to your office in a letter dated December 14, 2009.  I am enclosing the additional documentation you requested in your letter.
>
> As I stated in my last correspondence, I served as general counsel for Home Federal Savings Bank for approximately twenty years.  Among the documentation I am providing is my affidavit, my resume, a further breakdown of my invoice and the affidavit of the former chairperson of the Bank's board of directors.
>
> I decided to provide my resume so you would have an idea of my educational background and my work experience.  *My hourly rate is $350 and was the hourly rate charged the Bank.*  I hope that the enclosed documentation will answer questions you may have about my invoice.

(Ex. B to Pl.'s Compl.) (Emphasis added).  The Affidavit of Mr. Erwin that was submitted to the

FDIC to support his "claim for attorney's fees outstanding and owed to" Plaintiff (Ex. C to Pl.'s

Compl.), stated that he "performed a variety of legal services for Home Federal and during the

period from May of 2008 until November of 2009."  (*Id.* at ¶ 2).  Mr. Erwin's Affidavit states "I

billed my time [o]n behalf of Commercial Law through L. Fallasha Erwin at a rate of *$350 per*

*hour*" and that his "final invoice to Home Federal was in the amount $176,750."  (*Id.* at ¶¶ 4 &5)

(emphasis added).

The Affidavit of Helen G. Coleman that Plaintiff submitted to the FDIC in support of its

claim, and attached as Exhibit F to Plaintiff's Complaint, states that she "served as chairperson of

the Board of Directors for Home Federal Savings Bank for over the past ten years until FDIC was

appointed Receiver."  (Coleman Aff. at ¶ 1).  Coleman's Affidavit states that Plaintiff provided

legal services to Home Federal from May of 2008 until November of 2009.  (*Id.* at ¶ 2).

Coleman's Affidavit – which Plaintiff provided to the FDIC in support of its claim and attached

to Plaintiff's Complaint in this action – states that "[d]uring the aforementioned time-period, *the*

*Board approved the services provided by Commercial Law Corporation agreeing that*

*Commercial Law would delay its billing until after the Bank's capital ratio improved and the*

*Board agreed to execute whatever documents necessary for Commercial Law to collect its fees.*"

(*Id.* at ¶ 3) (emphasis added).

Plaintiff alleges that "[a]s security for the services rendered, the board of [Home Federal]

agreed to allow [Plaintiff] to place a charge on its real property."  (Pl.'s Compl. at ¶ 13).  Plaintiff

alleges that the chairperson of the Home Federal "board executed an attorney lien on November

1, 2009 and [Plaintiff] recorded the lien on January 26, 2010."  (Pl.'s Compl. at ¶ 14).  Plaintiff

attached, as Exhibits G and H to its Complaint, Attorney Liens for real property commonly

known as 9108 Woodward Avenue in Detroit, Michigan.  Those documents indicate that they

were signed by Coleman on November 1, 2009 (five days before the FDIC became the Receiver

to Home Federal) but, for reasons not explained by Plaintiff, they were not recorded with the

Wayne County Register of Deeds until January 26, 2010 (about eleven weeks after the FDIC was

appointed as Receiver).

The FDIC denied Plaintiff's claim.  (*See* Exhibit H to Pl.'s Compl.).  On June 23, 2010,

the FDIC sent Plaintiff a Notice that stated, in pertinent part, that:

> Pursuant to 12 U.S.C. Section 1821(d)(6), if you do not agree with this
> disallowance, you have the right to file a lawsuit on your claim (or continue any
> lawsuit commenced before the appointment of the Receiver) in the United States
> District (or Territorial) Court for the District within which the failed institution's
> principal place of business was located or the United States District Court for the

4

District of Columbia within 60 days from the date of this notice.

(*Id*.).

Plaintiff now seeks to obtain an "order awarding it its attorney fees as invoiced plus attorney fees and costs so wrongfully incurred in this matter." (Compl. at 3). Plaintiff seeks approximately $176,000.00 in fees.

**Plaintiff's Rule 26 Disclosures[1]**

Plaintiff's Rule 26 Disclosures, signed by Mr. Erwin on behalf of Plaintiff, state that Plaintiff "served as legal counsel for Home Federal Savings Bank (hereinafter referred to as 'Home') for over twenty years and maintained an open account. [Plaintiff] served as valuable counsel including providing important management assistance during a period when the bank's capital ratio had dipped. [Plaintiff] was the head entity in searching for investors and / or a merger partner for Home. For a period of over eighteen months, [Plaintiff] did not bill Home *based on an agreement with the bank that the firm would defer its billing until Home was in a more secure financial position*." (Pl.'s 4/15/11 Rule 26 Disclosures at 1-2) (emphasis added). Plaintiff's Rule 26 Disclosures also state that Helen Coleman, Home Federal's former Chairperson "will confirm" that "Home [Federal]'s Board agreed to give [Plaintiff] a lien on building to protect fees." (*Id*. at 2).

**Proceedings While The Case Was Assigned To Judge Hood**

After Plaintiff filed this action, Defendant filed a motion seeking a more definite

---

[1]The Court notes that the FDIC attached Plaintiff's Rule 26 disclosures as Exhibit C to the courtesy copy of its Reply Brief filed on December 5, 2013 (Docket Entry No. 192). The copy of Exhibit C actually filed on the docket, however, is a duplicate of another document. Because Plaintiff's Rule 26 Disclosures are significant, the Court attaches a copy of Plaintiff's Rule 26 Disclosures to this Opinion & Order as Exhibit 1.

statement on October 28, 2010, that was later denied by Judge Hood.

On November 11, 2010, Plaintiff filed a Jury Demand.

A series of discovery motions were then filed, which were referred to the magistrate judge.  On November 9, 2011, this case was reassigned to this Court.

**This Court Struck The Jury Demand As To The Security Interest Claim**

On December 15, 2011, Defendant filed a "Motion To Strike Jury Demand As To Plaintiff's Attorney Lien Claim." (Docket Entry No. 89).  On March 21, 2012, this Court issued an "Opinion & Order Granting Defendant's Motion To Strike Jury Demand" (Docket Entry No. 112).  This Court ruled that Plaintiff's "request to enforce its lien" is equitable in nature and must be tried by the Court.  (*Id*. at 5).

**Other Relevant Discovery**

To say that Plaintiff's Counsel has "played games" and failed to cooperate during discovery is being charitable.

On October 31, 2011, more than a year after it commenced this action, Plaintiff provided discovery responses to the FDIC.  In response to the FDIC's interrogatory asking Plaintiff whether it ever entered into a written agreement with Home Federal regarding legal services, Plaintiff responded:

> See answer to Interrogatory 2. In addition, Yes, [Plaintiff] did enter into a written retainer agreement was executed over twenty years ago.  Over the years, *the agreement was modified orally* with bank's president.  The original contract was in 1986.

(Docket Entry No. 187-6) (emphasis added).  Plaintiff further represented, in response to Interrogatory No. 2, that asked Plaintiff about the date if first began providing legal services to

6

Home Federal (Interrogatory No. 2), and what documents reflect that, that Plaintiff "has *no documents in its possession* currently that reflects [sic]. The documents are over twenty years old." (*Id.*) (emphasis added).

Mr. Erwin was finally deposed on September 28, 2012 – but only after this Court issued an order requiring him to appear for his deposition on that date. (*See* Docket Entry No. 164).

During his deposition, Mr. Erwin testified, consistent with Plaintiff's Complaint and its attachments, and Plaintiff's Rule 26 disclosures, that Plaintiff: 1) had a deferral agreement with the bank, under which Plaintiff's fees would be deferred until the bank's financial situation improved; and 2) also had an agreement with the bank's representatives that they would execute whatever documents that were needed for Plaintiff to collect its fees. (*See, e.g.*, Erwin Dep. Tr. at 118-124).

By the time Mr. Erwin was deposed, this action had been pending *for more than two full years.* Nevertheless, Mr. Erwin testified during his deposition that he had not searched Plaintiff's records to determine if the alleged agreements were in writing. (Erwin Dep. Tr. at 121-124). Mr. Erwin testified that he was unsure if the alleged agreements were oral or made in writing, but he believed they were oral agreements:

> Q.    As you sit here today, are you aware as to whether you have a copy of either of those agreements anywhere?
> A.    Mr. Sandell, the working relationship that I had with the board members was a type of working relationship that a lot of it was based upon trust, and so all the things that I did with them – I had a long-term relationship with them, so there were things that were done that maybe were not reduced to writing, but there was an understanding and an agreement, so they trusted me and I trusted them, so do I have a written agreement? I don't recall. I don't think so. If I give you a definite answer, I don't think so. Is it possible? It could be possible, but I don't think so. I think everything was oral.

7

(Erwin Dep. Tr. at 126).

**The Pending Motions**

After many discovery disputes and extensions of the Scheduling Order, Defendant filed a

Motion for Summary Judgment on October 25, 2013.  Due to the age of this case, it was given

priority as to a hearing date and was set for hearing on December 12, 2013.

On November 13, 2013 – more than three full years after this case was filed, long after

discovery had closed, and after the FDIC had filed its Motion for Summary Judgment –

Plaintiff's Counsel sent Counsel for the FDIC a letter stating:

> Please accept this letter as a supplement to your client [sic] original discovery
> request.  I am enclosing a copy of my original retainer agreement with Home
> Federal I uncovered in a storage area.
>
> In addition, I want to correct my response that my first work for Home Federal
> was not in 1986 but April of 1989.

(Docket Entry No. 189-3).

When Plaintiff filed its response to Defendant's Motion for Summary Judgment on

November 15, 2013, Plaintiff's Counsel did a complete about-face, asserting that its claim was

not based upon an oral deferral agreement or an oral agreement to execute documents to make

sure Plaintiff was able to collect, but rather, was based upon a written fee agreement:

> In this matter, contrary to the Defendant's false assertion, [Plaintiff] did have a
> written agreement with Home [Federal].  *See* Exhibit A.  Contrary to the
> Defendant's fabrication, there was never a so-called second agreement. *See*
> Exhibit M.

(Pl.'s Br. at 10).  Exhibit M to Plaintiff's response brief is an Affidavit from Mr. Erwin that

contradicts his deposition testimony, stating, in pertinent part:

> 4.      I first contracted to provide legal services as general counsel to Home

8

Federal Savings Bank (Home Federal) April 14, 1989.

5.    I continued to represent Home Federal from the first contract until the FDIC took over operation of the Bank on [sic] November of 2009.

6.    During a period starting from June 2009 through November 2009, I agreed, in [sic] behalf of [Plaintiff], with the Board of Home Federal to delay in presenting [Plaintiff's] invoice for that period for legal services regarding matters involved with regulatory issues and time spent in pursuing new capital.

7.    *The delay in presenting invoices for selected work was not an amendment of the original retainer agreement* and *[Plaintiff] and Home Federal never agreed on a condition involving Home Federal's capital ratio before the payment of the delayed invoicing.*

8.    [Plaintiff] has delayed presenting invoices to other clients in its 30 years of practice when requested by clients or because of the workload of [Plaintiff] and the time constraints prevented the submission [sic].

(Ex. M to Pl.'s Br.) (emphasis added).

The alleged written agreement, produced for the first time after discovery had closed, is

dated April 14, 1989.  (Ex. A to D.E. No. 188).  It states, in pertinent part:

This letter confirms our agreement whereby Commercial Law Corporation, P.C. agrees to render legal services as hereinafter specified and you agree to pay for such services.  The legal services will be billed at a rate of one hundred ten dollars ($110)[2] per hour and you will be billed on periodic basis for services rendered.
. . . .
Periodically, you will receive a statement setting forth services performed, cost, if any, and the fees associated therewith.  You agree to pay said statement upon receipt.
. . . .
This retainer agreement shall remain in full force and effect until it is amended in writing, or unless terminated by either party hereto.

(*Id.*).

Thereafter, in addition to filing a timely[3] Reply Brief in support of its Motion for

_____

[2]The claim that Plaintiff submitted to the FDIC stated that it charged the Bank $350 per hour.

[3]*See* Docket Entry No. 195 at 1-2, explaining that the Reply Brief was timely filed. Moreover, given the circumstances (i.e., Plaintiff filing a response brief that was based upon a

9

Summary Judgment, the FDIC filed its "Objection To And Motion To Strike Evidence Submitted By Plaintiff In Support Of Its Response To FDIC-R's Motion for Summary Judgment." (Docket Entry No. 189). Plaintiff responded to that motion on December 17, 2013.

On February 3, 2014, Plaintiff filed a "Motion To Strike Defendant's Motions and Briefs" (Docket Entry No. 196), making a litany of arguments that are completely lacking in merit. The Court shall deny that frivolous motion in its entirety.[4]

## ANALYSIS

### I.   Defendant's Motion To Strike Evidence (Docket Entry No. 189)

Pursuant to Rule 37(c), "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c).

After Plaintiff's last-minute production of the purported agreement that forms the basis of its claim, the FDIC filed a its "Objection To And Motion To Strike Evidence Submitted By Plaintiff In Support Of its Response To FDIC-R's Motion For Summary Judgment." (Docket Entry No. 189).

Plaintiff has offered *no credible reason* why it produced the purported written agreement after the close of discovery. The Court finds that Plaintiff has not shown that its failure to produce the written agreement during discovery was substantially justified, and it certainly was

---

agreement never produced during discovery), this Court would have exercised its discretion and accepted a late-filed reply brief.

[4]Indeed, after this motion was filed, this Court stayed further briefing on the motion because the motion is so frivolous that a response is not needed. (*See* 2/4/14 Docket Entry.)

10

not harmless.  The Court shall grant the motion and strike the late-produced purported written

agreement, as well as Mr. Erwin's Affidavit that contradicts his deposition testimony.

**II.     Defendant's Motion For Summary Judgment (Docket Entry No. 187).**

Plaintiff made a claim to the FDIC, as receiver for Home Federal, for alleged unpaid legal

fees.  The FDIC denied that claim and, pursuant to statute, Plaintiff is challenging that denial in

this action.  Plaintiff has a claim for unpaid legal fees that is based upon: 1) an alleged agreement

for attorney fees; and 2) an alleged security agreement.  As explained below, even the Court were

to consider the exhibits attached to Plaintiff's Response Brief, the Court concludes that

Plaintiff's claims fail as a matter of law.

**A.     Challenges To Plaintiff's Claim Based Upon An Alleged Fee Agreement.**

In its motion, the FDIC contends that, to the extent that Plaintiff's claim is based on an

alleged fee agreement with Home Federal, it fails as a matter of law.

**1.     Does Plaintiff's Claim Fail Because The Purported Agreement Is
Invalid Under 12 U.S.C. §§ 1821(d)(9) and 1823(e)?**

The FDIC contends that Plaintiff's claim for alleged unpaid legal services fails as a matter

of law because the purported agreement is invalid under 12 U.S.C. § 1821(d)(9) and 12 U.S.C. §

1823(e).  The Court agrees.

Claims brought against the FDIC as the receiver of a failed financial institution are

limited by statute.  12 U.S.C. § 1821(d)(9)(A) provides:

(9) Agreement as basis of claim
        (A) Requirements
        Except as provided in subparagraph (B),[5] *any agreement which does not*

_____

[5]Subparagraph (B) relates to certain extensions of credit between a Federal home loan
bank or Federal reserve bank and any insured depository institution and does not apply here.

11

> *meet the requirements set forth in section 1823(e) of this title shall not*
> *form the basis of,* or substantially comprise, *a claim against the receiver*
> *or the Corporation.*

12 U.S.C. § 1821(d)(9)(A) (emphasis added).

12 U.S.C. § 1823(e), referenced above, is the codification of a strong public policy, called

the "*D'Oench, Duhme* doctrine." *National Enter., Inc. v. Smith,* 114 F.3d 561,564 (6th Cir.

1997). "The *D'Oench, Duhme* doctrine takes its name from the decision of the *United States*

*Supreme Court in D'Oench, Duhme & Co., Inc. v. Federal Deposit Ins. Corp.*, 315 U.S. 447,

456-62, 62 S.Ct. 676, 678-82, 86 L.Ed. 956 (1942), wherein the Court emphasized the strong

public policy considerations for protecting the assets of failed banking institutions." *Id*.

The Sixth Circuit has explained the rationale behind the *D'Oench, Duhme* doctrine as

follows:

> The federal policy enunciated by the Court in *D'Oench* is mandated by the
> necessity for accuracy in regulatory reports. To be insured, a bank must be
> examined by the FDIC or by other regulatory authorities upon which the FDIC is
> authorized to rely. The purpose of a bank examination is to determine, as
> accurately as possible, the bank's financial condition and to identify unorthodox
> or dangerous practices. To carry out its duties, the FDIC must be able to rely on
> the bank's books and records as being accurate and reflecting the true state and
> condition of the insured bank's affairs. When an insured bank enters into oral
> agreements which are not fully and accurately memorialized in the bank's records,
> the true nature of the bank's rights and obligations might be obscured, and
> examiners can be misled, with the result that both depositors and the FDIC
> insurance fund are in jeopardy. In sum, the FDIC must be able to rely on the
> books and records of insured banks.

*First State Bank of Wayne Cnty., Kentucky v. City and County Bank of Knox Cnty.*, 872 F.2d 707,

715 (6th Cir. 1989).

The *D'Oench, Duhme* doctrine was "subsequently codified in 12 U.S.C. § 1823(e)."

*National Enter., Inc. v. Smith,* 114 F.3d at 564; *First State Bank of Wayne Cnty., Kentucky v. City*

12

*and County Bank of Knox Cnty.*, 872 F.2d at 715.  Section 1823(e) provides:

> (e) Agreements against interests of Corporation
>
>> (1) In general
>> No agreement which tends to diminish or defeat the interest of the
>> Corporation in any asset acquired by it under this section or section 1821
>> of this title, either as security for a loan or by purchase or as received of
>> any insured depository institution, shall be valid against the Corporation
>> unless such agreement –
>>
>>> (A) is in writing
>>>
>>> (B) was executed by the depository institution and any person
>>> claiming an adverse interest thereunder, including the obligor,
>>> contemporaneously with the acquisition of the asset by the
>>> depository institution.
>>>
>>> (C) was approved by the board of directors of the depository
>>> institution or its loan committee, which approval shall be reflected
>>> in the minutes of said board or committee, and
>>>
>>> (D) has been, continuously from the time of its execution, an
>>> official record of the depository institution.

18 U.S.C. § 1821(e).

The burden of establishing that a purported agreement satisfies the strict requirements of

§1823(e) lies with the claimant.  *FDIC v. Oldenburg*, 34 F.3d 1529, 1551 (10th Cir. 1994); 12

U.S.C. § 1823(e).  Plaintiff has not met that burden here.

In response to the FDIC's Motion for Summary Judgment, Plaintiff argues that the FDIC

is not entitled to summary judgment because: 1) Plaintiff had a written agreement with Home

Federal; and 2) Section 1823(e) is not applicable to contracts for services.  (*See* Pl.'s Br. at ii, 7-

10).  The Court rejects both arguments.

Plaintiff's argument that § 1932(b) does not apply to contracts for services is based upon

13

cases from outside the Sixth Circuit.  (Pl.'s Br. at 8-9).  The Sixth Circuit, however, has rejected this very argument.  In *First State Bank of Wayne Cnty., Kentucky*, the claimant argued that "the rule of *D'Oench* should be limited to situations involving misrepresentations regarding the collectibility of assets in the loan portfolio of banks and should not be applied to misrepresentations regarding the liabilities of a bank."  *First State Bank of Wayne Cnty., Kentucky*, 872 F.2d at 716.  The Sixth Circuit rejected that argument.  In doing so, it explained that "the focal point of the analysis is not on the type of transaction, but on whether it is in contradiction with what the bank has stated to the FDIC, or is part of any effort to deceive or mislead the FDIC as to the financial status of any banking institution."  *Id.*

Moreover, the Court concludes that regardless of which of the several alleged agreements the Court considers, Plaintiff has not met its burden of establishing that the agreement satisfies the strict requirements of § 1823(e).

      **a.**      **If Plaintiff's Claim Is Based On Any Alleged Oral Agreement, The Claim Fails To Meet § 1823(e)(1)(A)'s Writing Requirement.**

Throughout this action, Plaintiff has asserted that there was an alleged oral agreement under which it agreed to defer its bills until Home Federal's financial situation improved.  (*See, e.g.*, Exhibit F to Pl.'s Compl. at ¶ 3; Erwin Dep. Tr. at 118-24; Pl.'s Rule 26 Disclosures at 2, stating "[F]or a period of over eighteen months, [Plaintiff] did not bill Home [Federal] based on agreement with the bank that the firm would defer its billing until Home was in a more secure financial position").

Plaintiff has also asserted, throughout this action, that there was another oral agreement under which Federal Home representatives "agreed to execute whatever documents necessary for

14

Commercial Law to collect its fees." (Exhibit F to Pl.'s Compl. at ¶ 3; *see also* Erwin Dep. at 118-24; Pl.'s Rule 26 Disclosures at 2, stating that Coleman will "confirm Home [Federal]'s Board agreed to give [Plaintiff] a lien on building to protect fees").

In responding to the FDIC's Motion for Summary Judgment, however, Plaintiff asserts – for the first time ever – that its claim is based upon a written agreement with Home Federal.  (*See* Pl.'s Br. at 10, Ex. A to same, 4/14/89 Agreement).  Plaintiff now expressly disavows that there were any other agreements other than the written April 14, 1989 Agreement.  (*See* Pl.'s Br. at 10, "Contrary to the Defendant's fabrication, there was never a so-called second agreement.").[6]

To the extent that Plaintiff's claim is based on either of the previously-alleged oral agreements, the claim fails as a matter of law because, in contravention of § 1823(e)(1)(A), those agreements were not made in writing.

> **b.**   **If Plaintiff's Claim Is Based On The Purported Written April 14, 1989 Agreement, The Claim Still Fails To Meet Two of § 1823(e)(1)'s Requirements.**

To the extent that Plaintiff's claim is based on the April 14, 1989 agreement that Plaintiff's Counsel produced after discovery, the claim does not fare any better.  While that agreement satisfies § 1823(e)(1)(A)'s requirement that the agreement be made in writing, Plaintiff has made no attempt to establish that two of the remaining requirements of § 1823(e)(1) were met.

---

[6]Given that Plaintiff has now expressly disavowed that its claim is based upon any alleged oral agreement, the Court need not address the FDIC's additional argument that claims based on those alleged oral agreements fail because a condition precedent to the agreement (the bank's financial condition improving) never occurred.  But if Plaintiff were making a claim based upon the alleged oral deferral agreement, this argument would be yet another basis for denying Plaintiff's claim.

Section 1823(e) expressly requires that the agreement: 1) "was approved by the board of directors of the depository institution or its loan committee, *which approval shall be reflected in the minutes of said board or committee*;" and 2) "has been, continuously, from the time of its execution, an official record of the depository institution." 12 U.S.C. § 1823(e)(1)(C) & (D) (emphasis added).

The purported April 14, 1989 agreement, on its face, simply indicates it was signed on behalf of Home Federal by "Wilburn Phillips, President." In response to the FDIC's properly-supported Motion for Summary Judgment, Plaintiff has not produced any evidence to establish that the purported April 4, 1989 agreement was: 1) approved by Federal Home's Board of Directors; or 2) that such an approval was reflected in any minutes of said board meeting. Moreover, the FDIC has presented evidence to establish that its employees have thoroughly reviewed Federal Home's records, including Board of Directors' meeting minutes, bank officer records, legal and insurance documents, documents pertaining to counsel and other professionals, and they found no such documents. (*See* Sibley and Turner Affidavits). Thus, there is no evidence to establish that there has been, continuously, from the time of its execution, an official record of the Bank regarding Plaintiff's purported fees owed by the bank.

To the contrary, the banks's records include a June 13, 2008 letter to the Office of Thrift Supervision from Helen Coleman, the then-Chair of Home Federal, that stated:

> Along with the 10% salary reduction, the Board is considering staff reduction and closing the branch office on Saturdays. The lawn care service has been changed from a contract to an "as needed basis." The bank should realize a significant savings due to this change. *Our attorney advised the Board that there will not be any additional attorney fees charged.*

(Docket Entry No. 192-1 at Pg ID 3722) (emphasis added).

16

Considering the rationale underlying the *D'Oench Duhme* doctrine, codified in 12 U.S.C. § 1823(e) – that "[t]o carry out its duties, the FDIC must be able to rely on the bank's books and records as being accurate and reflecting the true state and condition of the insured bank's affairs," this case is a "poster-child" example of why § 1823(e) was enacted. *First State Bank of Wayne Cnty.*, 872 F.2d at 715.

This Court concludes that, regardless of which purported agreement Plaintiff's claim is based upon, the FDIC is entitled to summary judgment because Plaintiff has failed to meet its burden of establish that the strict requirements of § 1823(e) were met.

**B.** **Challenges To Plaintiff's Claim As Based Upon An Alleged Security Interest**

To the extent that Plaintiff's claim is based on an alleged security interest, the FDIC's motion asserts that summary judgment in its favor is warranted for several reasons.

Those reasons include: 1) the claim fails because the security agreements are invalid pursuant to 12 U.S.C. § 1823(e); 2) the claim fails because the security interests were taken in contemplation of the bank's insolvency, in violation of 12 U.S.C. § 1821(e)(12); 3) the liens were not actually granted or executed until after the FDIC was appointed and are therefore invalid and must be voided under 12 U.S.C. § 1825(b); 4) due to its "lien creditor status," the FDIC acquired an interest in all bank property that is senior to the then-unperfected liens and therefore the liens are invalid and must be voided; and 5) the liens violate Michigan's Rule of Professional Conduct and are therefore unenforceable.

While arguments one through four may all have merit, the Court need not reach them all.

     **1.**     **Does Plaintiff's Claim Fail Because Security Agreements And Liens Arising From Them Must Also Satisfy Section 1823(e)'s Requirements, And They Are Not Met Here?**

As its first argument, the FDIC notes that courts have specifically held that, like other agreements, security agreements and liens arising from them must also satisfy Section 1823(e)'s requirements in order to be enforceable.  (Def.'s Br. at 11).  The FDIC directs the Court to *North Arkansas Med. Ctr. v. Barrett,* 962 F.2d 780, 783 (8th Cir. 1992).  The FDIC asserts that, even if the liens at issue were signed on the date that Plaintiff claims they were (November 1, 1999,  five days before the FDIC was appointed as Receiver), the requirements set forth in Section 1823(e)(1)(C) & (D) were not met.

In response to this challenge, Plaintiff again asserts that Section 1823(e) does not apply because this case does not involve a traditional banking transaction.  (Pl.'s Br. at 11).  That is, Plaintiff continues to assert that this case involves a contract for services, and § 1823(e) therefore has no application.  For the reasons set forth in a preceding section of this Opinion & Order, the Court rejects Plaintiff's argument.

By its terms, § 1823(e) applies to any agreement "which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title," which includes a security agreement.

In addition, the Court finds *North Arkansas Medical Center* persuasive because it explains so well why §1823(e)'s requirements must be applied to security agreements/liens:

> [T]he purposes of section 1823(e) are to facilitate regulation and protect the FDIC from financial loss by assuring that the bank's financial condition can be assessed instantaneously; to assure that senior bank officials are aware of unusual transactions before the bank agrees to them; and to prevent collusion between bank employees and customers on the eve of a bank's failure.

The goal of enabling regulators to make accurate assessments of a bank's net worth would be undercut by exempting claims from section 1823(e) simply because they did not pertain to the bank's lending function. The FDIC's picture of the bank's net worth could be just as distorted by hidden liabilities to creditors as by secret agreements that impair the value of a loan.

. . . .

[E]nforcing a hidden security agreement could hamstring the FDIC in responding to a bank failure. The FDIC frequently chooses to handle a failed bank by using a purchase and assumption transaction instead of liquidating the failed bank. . . .In a purchase and assumption, the FDIC a receiver sells the bank's performing loans to a second bank. The second bank assumes the liability for the bank's deposits in exchange for the good assets and whatever insurance money the FDIC has to pay to make the transaction desirable to the second bank. The FDIC acting as receiver sells the bad loans, which no one else would want, to the FDIC acting in its corporate capacity, in exchange for insurance money . . . the result of permitting a hidden encumbrance would be that the parties to the purchase and assumption may wind up with an asset that is less valuable than it seemed. Therefore, it would be as intolerable for the FDIC to be deceived about the value of a certain asset as to be deceived about the net worth of the bank.

. . . .

Another goal of section 1823(e) . . . is that of preventing collusion between bank employees and favored customers. . . This possibility of collusion is already dealt with to some extent by the Uniform Commercial Code system of perfection of security interest – but Congress "opted for the certainty of the requirements set forth in § 1823(e)," and it was entitled to do so.

Therefore, applying the requirements of section 1823(e) to test the validity of a security agreement asserted against the FDIC is not only "textually compelled," but also consistent with the purposes of that law.

*North Arkansas Med. Ctr.,* 962 F.2d at 788-89.

Assuming *arguendo* that the security agreements at issue here were actually signed by

Helen Coleman on November 1, 2009, which the FDIC strenuously disputes, Plaintiff has not

established that it has met at least two of the strict requirements of § 1823(e).

In response to the FDIC's properly-supported Motion for Summary Judgment, Plaintiff

has not produced any evidence to establish that the purported November 1, 1999 liens were: 1)

approved by Federal Home's Board of Directors; or 2) that such an approval was reflected in any

19

minutes of said board meeting.  Thus, Plaintiff has not established that § 1823(e)(1)(C) was satisfied.

Moreover, the FDIC has presented evidence to establish that its employees have thoroughly reviewed Federal Home's records, including Board of Directors' meeting minutes, bank officer records, legal and insurance documents, documents pertaining to counsel and other professionals, and they found no such documents.  (*See* Sibley and Turner Affidavits).   Thus, Plaintiff has not established that § 1823(e)(1)(D) was met either.

Accordingly, the Court rules that, to the extent that Plaintiff's claim against the FDIC is based on an alleged security interest, the claim fails because Plaintiff has failed to meet its burden of establishing that the strict requirements of § 1823(e) were met.

### 2.    Does Plaintiff's Claim Fail Because The Purported Security Interests Were Taken In Contemplation Of The Bank's Insolvency?

In addition, the FDIC asserts that, even if the purported liens were otherwise valid, they would still be unenforceable because they were taken in contemplation of the Bank's insolvency. Once again, the Court agrees.

Section 1821(e)(12) provides that "[n]o provision of this subsection shall be construed as permitting the avoidance of any legally enforceable or perfected security interest in any of the assets of any depository institution *except where such an interest is taken in contemplation of the institution's insolvency* or with the intent to hinder, delay, or default the institution or the creditors of such institution."  12 U.S.C. § 1821(e)(12) (emphasis added).

The FDIC notes that provisions like this are intended to prevent failing banks from granting preferences to certain creditors by allowing bank regulators to avoid and unwind such

20

transfers.  (*See* Pl.'s Br. at 16).  The FDIC argues that a transaction is made in contemplation of the bank's insolvency when the transaction occurs after it has become reasonably apparent to the bank's officers that the bank will be unable to meet its obligations as they accrue.  (*Id.*)

Here, Plaintiff claims that the purported liens were signed on November 1, 1999 – *just five days before the FDIC was appointed as receiver for Home Federal.*

Along with Plaintiff's Complaint, Plaintiff submitted an Affidavit from Ms. Coleman that states that during the 18-month period prior to the FDIC being appointed as receiver of the bank, the Board agreed that Plaintiff "would delay its billing until after the Bank's capital ratio improved and the Board agreed to execute whatever documents necessary for Commercial Law to collect its fees."  (Coleman Aff.)  By November 1, 1999 – just five days prior to the receivership – the bank's officers knew or should have known that bank was unable to meet its obligations as they accrued.

Given those facts, if Ms. Coleman did execute the purported liens just five days prior to the FDIC being appointed as receiver, it is obvious that she did so "not in the regular course of business, but in contemplation of an act of insolvency and with an intent to prefer [Plaintiff] to other creditors of the bank.*" Pearson v. Durell*, 77 F.2d 465, 468 (6th Circ. 1935).

Accordingly, the Court concludes that this additional ground for relief also has merit.

### 3.    Are The Liens Invalid Because They Were Not Signed By Ms. Coleman Until After The FDIC Had Been Appointed Receiver?

It is undisputed that the liens are invalid if they were signed by Ms. Coleman after the FDIC had been appointed as receiver of Home Federal.   As yet another ground for granting summary judgment in its favor, the FDIC asserts:

21

Here, Plaintiff has contended throughout this litigation that the Attorney Liens were executed by Helen Coleman and granted by the Bank on November 1, 2009 – five days before the Bank failed.  However, information obtained through discovery has proven that Plaintiff has lied to this Court, and that Erwin, Plaintiff's principal and counsel, create the Attorney Lien documents on January 14-15, 2010, e-mailed them to Ms. Coleman for execution three days later on January 18, 2010, and then recorded the documents with the Wayne County Register of Deeds eight days later on January 26, 2010.  The Attorney Liens were not granted by the Bank before it failed.

Indeed, FDIC-R has obtained e-mails and other documents from third-party witnesses clearly indicating that Erwin, a Michigan-licensed attorney, has manufactured and back-dated documents in this case in an effort to support Plaintiff's claims.  More specifically, from the beginning of this case, the FDIC-R was always curious as to why Erwin would wait until 11 weeks after the Bank had failed to record the Attorney Liens if the documents were truly signed by Ms. Coleman on behalf of the Bank five days before the Closing Date.

(Def.'s Br. at 20-21).

As Exhibit 4 to its Brief, the FDIC attaches a copy of an e-mail that Mr. Erwin sent to Ms. Coleman on January 18, 2010, that stated "Attached are the documents were [sic] discussed for your execution and my last invoice.  Please contact me with questions or comments." Attached to that e-mail were unsigned copies of the lien documents.[7]

In response, Plaintiff continues to assert that Ms. Coleman signed the liens on November 1, 1999.  Plaintiff notes that Ms. Coleman testified she signed the documents on November 1, 1999, at Mr. Erwin's office.  (Coleman Dep., Ex. Pl to Pl.'s Br.).  Plaintiff also argues that Ms. Coleman was not computer-literate enough to open attachments.

Based on the evidence presented to date, Mr. Erwin may well have fraudulently created and back-dated the lien documents at issue.  But the Court concludes that it would not be

---

[7]The FDIC only obtained those documents after numerous discovery disputes because Mr. Erwin claimed his computer "crashed" and the FDIC had to obtain his e-mails from a third-party internet provider.

appropriate to make a ruling on this issue without holding an evidentiary hearing or a bench trial

on the issue.  The Court declines to do so, given that Plaintiff's claim based on the alleged liens

fails as a matter of law for the other above-stated reasons.  This case has already expended an

inordinate amount of judicial resources.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Defendant's Motion to Strike

(Docket Entry No. 189) is GRANTED to the extent that the Court STRIKES, pursuant to Fed. R.

Civ. P. 37(c), the written agreement produced by Plaintiff after the close of discovery and Mr.

Erwin's Affidavit that contradicts his deposition testimony.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike (Docket Entry No. 196) is

DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (Docket

Entry No. 187) is GRANTED and Plaintiff's claims shall be DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  February 4, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on
February 4, 2014, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager