UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Commercial Law Corporation, P.C.,
a Michigan Professional Corporation,

    Plaintiff,

v.                                                   Case No. 10-13275
                                                     Sean F. Cox
Federal Deposit Insurance Corporation,       United States District Court Judge
as Receiver for Home Federal Savings
Bank,

    Defendant.
_____/

## **OPINION & ORDER**

        Plaintiff Commercial Law Corporation ("CLC") filed this action against Defendant the Federal Deposit Insurance Corporation ("FDIC") in its capacity as receiver for a failed bank, claiming $176,500.00 in unpaid attorney fees for legal services provided to the bank. In this action, CLC asserted a breach of contract claim for the unpaid fees and also asserted a separate "lien claim," based on two liens to real property that the bank's officers allegedly gave CLC prior to its insolvency. After two appeals to the Sixth Circuit, the matter is back before this Court on CLC's Motion for Enforcement of Secured Interests. In this motion, CLC asserts that it is a secured creditor, by virtue of the liens, and that the FDIC cannot satisfy the judgment it received in this action, following the first appeal, by providing it a useless "receiver's certificate" for the amount of the judgment. CLC asks the Court to "allow it to enforce its judgment against secured interest granted by Home Federal Savings Bank and its successor FDIC."

1

This motion was fully briefed and the Court held a hearing on October 18, 2018. As explained below, the Court concludes that the most efficient way of resolving this longstanding and contentious case would be for the Court to determine the validity of the alleged liens at an evidentiary hearing or bench trial. After doing so, the Court can proceed to determine any remaining issues.

**BACKGROUND**

This contentious case, filed back in 2010 and originally assigned to the Honorable Denise Page Hood, has a lengthy background. The Court includes here only those facts relevant to the pending motion.

On November 6, 2009, Home Federal Savings Bank ("HFSB") was closed by the Office of Thrift Supervision and the FDIC was appointed as the bank's receiver. Thereafter, CLC submitted a timely administrative proof of claim to the FDIC seeking payment of $176,750 in attorney fees for services that had been performed for the bank. In June of 2010, the FDIC disallowed CLC's administrative claim in its entirety, prompting this litigation.

On August 18, 2010, Plaintiff CLC filed this action against the FDIC, as Receiver for HFSB. The action was filed in federal court based upon federal-question jurisdiction under 12 U.S.C. § 1819(b)(2)(A). The action was originally assigned to Judge Hood.

CLC's complaint alleges that CLC provided services to HFSB and that it is owed money for unpaid legal work that was performed before the bank went into receivership. The complaint notes that CLC made a claim to the FDIC for the claimed work but the claim was disallowed. The complaint alleged that "[a]s security for the services rendered, the board of HFSB agreed to allow CLC to place a charge on its real property" and that the "chairperson of the HFSB board

2

executed an attorney lien on November 1, 2009 and CLC recorded the lien on January 26, 2010." (Compl. at ¶ 13-14). CLC attached a copy of the attorney liens as Exhibit G to its complaint.

The attorney liens state that CLC was claiming an attorney's charging lien on the ownership interest of HFSB in the real property identified in them, which are two properties: 1) 9108 Woodward Avenue in Detroit, Michigan ("the Woodward Property"); and 2) 13300 W. Seven Mile Road Detroit, Michigan (the "Seven Mile Property").

On November 9, 2011, Judge Hood disqualified herself from the case and its was reassigned to this Court.

In an Opinion & Order issued on March 21, 2012, this Court struck CLC's jury demand as to the lien claim, ruling that claim is an equitable claim to be tried by the bench. (D.E. No. 112).

There were numerous discovery disputes that delayed the progression of this action. This Court extended the dates contained in the Scheduling Order several times. Ultimately, the Court set a final date of October 25, 2013 for the filing of dispositive motions.

On February 4, 2014, this Court issued an Opinion & Order wherein it granted summary judgment in favor of the FDIC, concluding that its claims failed as a matter of law. On February 5, 2014, this Court issued an Amended Judgment in this action that stated:

> For the reasons set forth in an Opinion & Order issued on February 4, 2014, IT IS ORDERED, ADJUDGED, AND DECREED that this action is DISMISSED WITH PREJUDICE and the Court DECLARES that the attached Attorney Liens, dated November 1, 2009, and filed with the Wayne County Register of Deeds on January 26, 2010, at Liber 48322 Page 117-119, and at Liber 48322 Page 120-122, are VOID AND DISCHARGED.

(D.E. No. 199).

CLC filed a timely appeal, appealing the February 4, 2014 Opinion & Order. (*See* D.E.

3

No. 200). But CLC did not request that either this Court or the Sixth Circuit stay execution of the judgment during the pendency of its appeal.

The FDIC asserts, but has not offered any evidence to substantiate, that it recorded the Amended Judgment with the Wayne County Register of Deeds on February 10, 2014.

The FDIC further states that on June 23, 2014 – approximately four months after the Amended Judgment was recorded – the FDIC transferred both the Woodward and Seven Mile Properties to Liberty Bank and Trust Co. (Def.'s Br. at 10). The FDIC states that when the HFSB was closed the FDIC had entered into a "Purchase and Assumption Agreement" through which it sold some of the failed bank's assets, including the two properties. But, because of the liens CLC had recorded, the FDIC had been unable to consummate the sale and transfer. (*Id*.). The FDIC states that after the Amended Judgment was recorded, it was finally able to do so after waiting more than four years. The FDIC asserts that since that time both properties "have been owned free and clear by Liberty, which is not now and never has been a party to this lawsuit." (*Id*.).

On January 27, 2015, the Sixth Circuit issued a decision, wherein it reversed this Court's grant of summary judgment, taking a more narrow view of the *D'Oench* doctrine than the Eighth Circuit. *Commercial Law Corp., P.C. v. F.D.I.C.*, 777 F.3d 324 (6th Cir. 2015). In its opinion, the Sixth Circuit noted that CLC raised multiple issues, but concluded that "CLC adequately develop[ed] only three issues." *Id*. at 327.

In a footnote, the Sixth Circuit noted that CLC objected to other matters, including "the district court's order striking its jury demand for the lien claim," and ruled that issue was forfeited. *Id*. at 327 n.1. Thus, this Court's order ruling that CLC has no right to a jury trial

4

relating to its lien claim stands.

The Sixth Court found the following issues to be adequately developed such that it would rule on them: 1) the applicability of *D'Oench* and § 1823(e)(1) to its claim for attorneys' fees; 2) the district court's exclusion of the retainer agreement as a discovery sanction; and 3) the court's conclusion that CLC's security interests were granted in contemplation of the bank's insolvency.

In ruling in favor of CLC on the first issue, the Sixth Circuit referenced and discussed the liens, stating:

> With respect to CLC's security interests in two bank properties, the FDIC contends that CLC's liens diminish the FDIC's interest in those assets, and thus bring this case under *D'Oench.* The district court agreed, relying on the Eighth Circuit's decision in *North Arkansas Medical Center v. Barrett*, 962 F.2d 780 (8th Cir. 1992). That decision, we note, adopted a much broader reading of *D'Oench* and §§ 1821(d)(9)(A) and 1823(e)(1) than we do. *See N. Ark. Med. Ctr.*, 962 F.2d at 787-89 (holding that the statutory documentation requirements apply to security interests pledged by a failing financial institution as collateral for large certificates of deposit).
> Regardless, *CLC has not attempted to enforce the attorney liens in this case*. The *complaint seeks only "an order awarding it its attorney fees as invoiced plus attorney fees and costs so wrongfully incurred in this matter."* CLC's appellate briefing on the security interests similarly focuses on the fees claim; the matter appears as a sub-argument of the *D'Oench* issues pertaining to CLC's fees claim and informs the court that CLC "is only seeking compensat[ion] for valuable services" it performed for the bank.
> The existence of these disputed liens does not convert CLC's straightforward contract claim for fees into the sort of secret agreement affecting bank assets and liabilities covered by *D'Oench*. CLC avers that the bank executed the security interests in November 2009, toward the end of the period of disputed legal services and just before the FDIC takeover. It therefore appears to present an agreement separate from the fee-deferral. Further, *as we understand it, the alleged liens constitute a contingent remedy, available only if CLC prevails on the merits of its fees claim and the FDIC then defaults. Even then, CLC would need to demonstrate the legitimacy of the liens in the face of* the FDIC's fraud allegations – something Erwin acknowledged during oral argument. *Given the uncertain procedural posture of the security-interest claim, the contingent nature of the remedy, and the sparse briefing of these issues, we declined to address any remaining statutory or D'Oench issues at this time.*

*Id.* at 333-34 (emphasis added).

5

As to the second issue, CLC's challenge of this Court's discovery sanction of striking the 1989 retainer agreement, the Sixth Circuit concluded that issue was moot and did not address it.

As to the third issue, CLC challenged this Court's conclusion that CLC's security interests were granted in contemplation of the bank's insolvency. In the facts section of the opinion, the Sixth Circuit noted that CLC claimed that "five days before the FDIC takeover, the bank granted it security interests in two bank properties" but "[i]nexplicably, CLC waited until late January 2010 to record the attorney liens for these security interests." *Id*. at 326. The Sixth Circuit concluded that this was an issue for the factfinder to determine, stating:

> Finally, we address the district court's alternative conclusion holding the attorney liens unenforceable under 12 U.S.C. § 1823(e)(12) because they "were taken in contemplation of the Bank's insolvency." The court premised its ruling on two facts: (I) Erwin's alleged execution of the security interests five days before the bank was put into receivership, and (ii) the bank's understanding that CLC would defer collecting fees until the bank's financial condition improved. The FDIC's briefing adds nothing to this account, other than its assertion that Erin may have backdated the lien documents. A reasonable factfinder may well agree that this sequence of events demonstrates that the bank executed the security interests in expectation of its demise. But, in the absence of additional evidence demonstrating the parties' actual or constructive knowledge of the bank's financial situation, the temporal proximity of the security interests to the FDIC takeover does not suffice for ruling on this issue as a matter of law. *Cf. Pearson v. Durell*, 77 F.2d 465, 566-68 (6th Cir. 1935) (granting judgment to bank's receiver, where the record established that a bank director retrieved funds from the failing bank the day before its liquidation, at a time when the bank "had neither the money nor any assets on which it could obtain money to meet its obligations.").

*Id*. at 334.

The Sixth Circuit reversed the judgment and remanded "for further proceedings consistent with this opinion." *Id*.

At a Status Conference held after the mandate issued, Counsel for both parties inquired about filing additional dispositive motions. Due to the very late stage of this litigation, the Court

issued an order on June 30, 2015, providing that any party who wishes to file a dispositive motion must file a motion seeking leave to do so. Soon after, both parties sought leave to file untimely dispositive motions. This Court denied leave to file both motions.

Thereafter, the parties agreed to a Joint Final Pretrial Order (Docket Entry No. 215). After submitting the Joint Final Pretrial Order, the parties then filed a number of motions in limine, that were decided by the Court. The parties also filed their trial materials, including trial briefs, proposed voir dire, and proposed jury instructions. A jury trial was scheduled to begin on Tuesday, March 15, 2016.

On March 3, 2016, the FDIC filed "FDIC-R's Motion to Dismiss Case Pursuant to Fed. R. Civ. P. 12(b)(1) and (h)(3)." (Docket Entry No. 248). In this motion, the FDIC asserted that on March 3, 2016, the FDIC "tendered to the Plaintiff a receiver's certificate" in the amount of $176,750. The FDIC asserted that this Court should dismiss this case because the FDIC has provided Commercial Law with all the relief that Commercial Law could obtain in this action. On March 14, 2016, this Court held a Mandatory Trial Conference with the parties.

Later that same day, the Court issued a Judgment in favor of Commercial Law that stated as follows:

> As stipulated by the parties on the record this date, the Court hereby enters Judgment in favor of Plaintiff Commercial Law Corporation, P.C. and against the Federal Deposit Insurance Corporation, as Receiver for Home Federal Savings Bank, in the amount of $176,750.00, with any interest, costs, and attorney fees to be determined by the Court.

(D.E. No. 253). A footnote to it stated "[a]s set forth on the record this date, the Court notes that the FDIC contends that the Judgment is satisfied by tendering a receiver's certificate in the amount of $176,750.00 to Plaintiff. Plaintiff disagrees. The parties also dispute whether

7

Plaintiff may recover any interest, costs, or attorney fees under applicable law." The Court included that footnote in order to note the parties' respective positions, and allow the parties to file whatever motions they deemed appropriate as to those issues.

Thereafter, Commercial Law filed two different motions: 1) a Motion for Leave to Recover Attorney Fees, Interest and Have Costs Taxed to Defendant FDIC (D.E. No. 254); and 2) Commercial Law's Motion For Review Of Costs Denied By Clerk (D.E. No. 258).

On July 28, 2016, this Court issued an Opinion & Order (D.E. No. 262) wherein it denied CLC's request for attorney fees, but awarded CLC costs. CLC appealed.

In a decision issued on November 6, 2017, the Sixth Circuit noted that CLC had raised "an array of arguments" on appeal. *Commercial Law Corp. v. F.D.I.C.*, 716 F. App'x 383, 385 (6th Cir. 2017). But, once again, it did not address them all.

The Sixth Circuit first noted that CLC argued that the "receiver's certificate" it got from the FDIC did not satisfy the judgment but, because "CLC did not press this argument to resolution in the district court," it concluded that the issue was "not properly before us." *Id*. 385-86. Nevertheless, the court explained:

> The FDIC had transferred HFSB's assets to a third party, Liberty Bank and Trust Co., and rejected CLC's claim that it had a valid lien on HFSB, meaning that it deemed CLC an *unsecured* creditor. In short, CLC has not been paid and if it is actually an unsecured creditor it likely *will not* be paid. When a receiver issues a "receiver's certificate" to an unsecured creditor, it entitles that creditor to share in the available fund pro rata with all other unsecured claims. If FDIC is correct and CLC is an unsecured creditor, the "receiver's certificate" would satisfy the judgment even though CLC will likely not receive any of the $176,750 judgment. CLC, however, contends that it is a *secured creditor* and, because receivers may not issue "receiver's certificates" to secured creditors, the "receiver's certificate" issued here does not satisfy the judgment.

*Id.* at 385-86.

8

The Sixth Circuit then proceeded to address this Court's denial of requested attorney fees to CLC, affirmed this Court's rulings, and affirmed the judgment of the district court. *Id*. at 387. The court did note that there was a clerical error as to the amount of costs, in that CLC was entitled to $30 more than reflected in total of costs awarded. It suggested the CLC file a motion to correct the amount of costs, pursuant to Fed. R. Civ. P. 60(b).

The mandate issued on February 14, 2018. Thereafter, the parties agreed to the entry of an Amended Judgment that included the correct amount of costs.

On May 29, 2018, CLC filed the pending "Motion for Enforcement of its Amended Judgment Against Its Secured Interests On Property Of Home Federal Savings Bank Held In Receivership By Defendant FDIC." (D.E. No. 274). In it, CLC makes a variety of arguments. In sum, CLC asserts that it is a secured creditor, by virtue of the liens, and that the FDIC cannot satisfy the judgment it received in this action by tendering a receiver's certificate. CLC asks the Court to "allow it to enforce its judgment against secured interest granted by Home Federal Savings Bank and its successor FDIC." (Pl.'s Br. at 1).

In response, the FDIC asserts that the motion should be denied for three reasons: 1) "CLC's judgment has already been paid, in full," through the FDIC's issuance of receiver certificates, and thus no collection remedies are available; 2) the liens no longer exist and the attorney lien claim is now moot; and 3) even if the receiver's certificate did not constitute payment, and the liens still exist, CLC still could not enforce the liens because CLC "has not and cannot prove the liens are valid, as expressly required by the Sixth Circuit's mandate in this case." (Def.'s Br. at 2). As to that third argument, the FDIC's brief further states that "the Sixth Circuit was clear that (1) enforcement of the liens would only be available if and when CLC

9

obtained a judgment and the FDIC-R failed to pay such judgment; and (2) even in that situation, CLC would need to first demonstrate the validity of the liens." (*Id*. at 12-13).

## ANALYSIS

The bulk of CLC's motion is devoted to its position that: 1) CLC has a secured claim, not an unsecured claim, and therefore the FDIC cannot satisfy the judgment in this case via a receiver's certificate; and 2) it should be permitted to enforce its security interest in the two properties.

In ruling on the first appeal, the Sixth Circuit stated that CLC's disputed liens "constitute a contingent remedy" that would be available "only if:" 1) "CLC prevails on the merits of its fees claim" and 2) "the FDIC then defaults." *Commercial Law Corp*., 777 F.3d at 333. Moreover, "[e]ven then, CLC would need to demonstrate the legitimacy of the liens" especially in light of the fraud allegations made by the FDIC. *Id.*

Following that first appeal, the FDIC and CLC stipulated to the entry of a judgment in this action in favor of CLC in the amount of $176,500.00. That is the total amount of alleged unpaid attorney fees that CLC sought in this case. Thus, CLC prevailed on its fees claim.

The next issue to determine is whether the FDIC defaulted, such that CLC could seek to pursue the contingent remedy of enforcing the disputed liens in this case.

It appears undisputed that: 1) if CLC is an unsecured creditor, the "receiver's certificate" tendered by the FDIC to CLC would satisfy the judgment in this action, even though as a practical matter it would likely receive no actual monetary payment; and 2) if CLC is a secured creditor, the judgment cannot be satisfied by a receiver's certificate. *See Commercial Law Corp*., 716 F. App'x at 385; *see also* FDIC's Br. (arguing repeatedly that the issuance of

receiver's certificate is considered full payment for an *unsecured* claim).

Thus, the issue becomes whether CLC's claim for unpaid attorneys' fees is a secured claim, by virtue of having been granted valid liens to the two properties owned by the bank. But, in light of the Sixth Circuit's reversal of this Court's grant of summary judgment, the issue of the validity of the liens is an open question in this case.

This Court's prior Opinion & Order that granted summary judgment in favor of the FDIC concluded that CLC's lien claim failed because the liens were taken in contemplation of the bank's insolvency, in violation of 12 U.S.C. § 1821(e)(12). (*See* 2/4/14 Opinion & Order at 20-21). This Court further expressed that another basis for invalidating the liens may exist. (*Id*. at 22) (stating that "[b]ased on the evidence presented to date, Mr. Erwin may well have fraudulently created and back-dated the lien documents at issue," but concluding "that it would not be appropriate to make a ruling on th[at] issue without holding an evidentiary hearing or bench trial on the issue."). On appeal, however, the Sixth Circuit concluded the issue should be decided by the factfinder. *See Commercial Law Corp*., 777 F.3d at 334.

Accordingly, the Court concludes that the most efficient way of resolving this longstanding and contentious case would be for the Court to determine the validity of the alleged liens at an evidentiary hearing or bench trial. After doing so, and issuing its ruling, the Court can proceed to determine any remaining issues in this case.

Accordingly, the Court **ORDERS** that CLC's pending motion **IS GRANTED** only to the extent that the Court shall hold an evidentiary hearing/bench trial, in order to determine the validity of the alleged liens. **IT IS FURTHER ORDERED** that:

1) The Court shall hold the evidentiary hearing/bench trial on **December 3, 2018,**

> **beginning at 2:00 p.m.**, and continuing thereafter as needed;
>
> 2) No later than **November 15, 2018**, each party shall file a **Witness List**, identifying all witnesses that may be called to testify at the evidentiary hearing, along with a description of the expected testimony from each witness, and an estimate as to the amount of time for the testimony of each witness;
>
> 3) No later than **November 15, 2018**, each party shall file an **Exhibit List**, that identifies all proposed exhibits that may be introduced into evidence at the evidentiary hearing. Plaintiff shall label its proposed exhibits with sequential letters and Defendant shall label its proposed exhibits with sequential numbers;
>
> 4) No later than **November 16, 2018**, each party shall deliver to chambers two (2) copies of a binder that contains all of its proposed exhibits; and
>
> 5) No later than **November 15, 2018**, each party shall file **Proposed Findings of Fact and Conclusions of Law.**

**IT IS FURTHER ORDERED** that the Court **DENIES** all remaining issues raised in CLC's motion **WITHOUT PREJUDICE**. After the Court issues its ruling regarding the validity of the liens, the Court will hold a Status Conference, in order to determine an appropriate schedule for determining any remaining issues in this case.

**IT IS SO ORDERED**.

s/Sean F. Cox  
Sean F. Cox  
United States District Judge

Dated: October 29, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on

October 29, 2018, by electronic and/or ordinary mail.

                                        s/Jennifer McCoy
                                        Case Manager